BARKER, (UNITED STATES v.) See Cases Nos. 14,516–14,520.

———————

## Case No. 996.

### BARKER v. WHITE.

[11 Blatchf. 445;[1] 19 Int. Rev. Rec. 117.]

Circuit Court, S. D. New York. Feb. 13, 1874.

INTERNAL REVENUE—REASSESSMENT OF TAX.

1. Under section 20 of the internal revenue act of June 30th, 1864, as amended by section 9 of the act of July 13th, 1886, (14 Stat. 104,) an assessor has power to make a supplementary assessment, increasing the amount of tax to be paid by a distiller for a given month, even though the return made by the distiller for such month was correct, and the cause of the re-assessment is a mistake made by such assessor in the first assessment, and the amount of tax first assessed was paid.

[Cited in U. S. v. Black, Case No. 14,600.]

2. But, where the tax re-assessed is paid under protest, and a suit is brought to recover it back, the re-assessment cannot be upheld, unless it is shown that the assessor, before making the re-assessment, determined that an error had been committed in the first assessment, the record of the re-assessment not being evidence of that fact.

[At law. Action by James Barker against William B. White to recover the amount of an internal revenue tax paid by plaintiff under protest to the defendant, as collector. Judgment for plaintiff.]

Thomas Harland, for plaintiff.

———————

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

John A. Goodlett, Asst. Dist. Atty., for defendant.

SHIPMAN, District Judge. This action is brought to recover the sum of $3,773.73, being a tax paid by the plaintiff, under compulsion and protest, to the defendant, as collector of the 6th internal revenue district of New York.

Not long after the act of July 20th, 1868, (15 Stat. 125,) was passed, the plaintiff entered upon the business of a distiller, and, in October, November, and December, 1868, and February, 1869, made the returns to the assessor required by the statute. The assessor made an assessment for these months, and returned to the collector a duly certified list or lists containing said assessment, which was paid by the plaintiff. Subsequently, in July, 1869, the assessor made, under instructions from the commissioner of internal revenue, a supplementary assessment for said months, increasing the tax for October and November, and decreasing it for one or both of the other months. There was a total increase of $3,773.73. It is conceded that the returns of the distiller were correct. The re-assessment was made in consequence of the belief of the commissioner of internal revenue that the original assessments upon said returns were erroneous, through a mistake of the assessor. Whether that belief was well or ill founded, does not now appear.

The plaintiff proved that he paid the assessment originally made by the assessor, and contained in the first list returned to the collector, that he paid, under constraint and protest, the re-assessment, and appealed to the commissioner of internal revenue, which appeal was denied, and that this action, to recover the amount last paid, was brought in due season, and here rested his case. The government was able to show simply the re-assessment made by the assessor, and duly certified to the collector, but did not show wherein the error in the first assessment consisted, or that it was ever determined or ascertained that there was an error.

Upon these facts, thus proved, two questions have been discussed: (1) Where the taxpayer has made a correct return, and the assessor has made an incorrect assessment thereon, which has been paid, has the assessor, under the statute, power to make a supplementary assessment? The decision of this question depends upon the construction to be given to section 20 of the act of June 30th, 1864, as amended by section 9 of the act of July 13th, 1866, (14 Stat. 104,) which is as follows: "And, in case it shall be ascertained that the annual list, or any other list, which may have been, or which shall hereafter be, delivered to any collector, is imperfect or incomplete, in consequence of the omission of the names of any persons or parties liable to tax, or in consequence of any omission, or understatement, or undervaluation, or false or fraudulent statement

contained in any return or returns made by any persons or parties liable to tax, the said assessor may, from time to time, or at any time within fifteen months from the time of the passage of this act, or from the time of the delivery of the list to the collector as aforesaid, enter on any monthly or special list the names of such persons or parties so omitted, together with the amount of tax for which they may have been, or shall become, liable, and also the names of the persons or parties in respect to whose returns, as aforesaid, there has been or shall be any omission, undervaluation, understatement, or false or fraudulent statement, together with the amounts for which such persons or parties may be liable, over and above the amount for which they may have been, or shall be, assessed upon any return or returns made as aforesaid, and shall certify or return said list to the collector, as required by law. And all provisions of law for the ascertainment of liability to any tax, or the assessment or collection thereof, shall be held to apply, as far as may be necessary, to the proceedings herein authorized and directed." It is claimed that this section confers upon the assessor power to make a supplementary list and assessment, only in case there has been an omission in the original list of the name of the person liable to tax, or in case the taxpayer has himself made an omission, or understatement, or undervaluation, or false or fraudulent statement in his return; and that, when the person liable to tax has made an entirely correct return, and the assessor has made an assessment thereon, the assessor is functus officio, and has no power to correct his own errors in his list or assessment. If this construction is the correct one, the statute has omitted to provide any remedy for the mistakes, errors, or frauds of the assessor. The assessment of taxes upon distillers, under the internal revenue acts, requires care, an accurate knowledge of the statutes, and somewhat difficult arithmetical computations. An error might easily be made by an honest assessor, which ought to be corrected. If he has no power to do it, the act is seriously imperfect. I do not think that such imperfection exists. The statute provides, that, if the original list is imperfect, or incomplete, "in consequence of the omission of the name of any persons or parties liable to tax," it can be corrected. This certainly means any omission of the name, either by reason of the oversight of the assessor, or of the neglect of the taxpayer to make a return. The omission need not necessarily be an omission arising on the part of the taxpayer, but is an omission from any cause whatever. The act then provides, that, if the list is incomplete, by reason of "any omission or understatement, or undervaluation, or false or fraudulent statement contained in any return or returns," it may be corrected. The omission, or understatement, or undervaluation, mentioned in this clause of the act, is

not necessarily limited to any omission, or undervaluation, or understatement contained in a return. If the incompleteness resulted from any omission, or understatement, or undervaluation, from whatever source it arose, or from whatever cause it happened, the power is given to correct; and if the incompleteness arose from an error in the taxpayer's return, then such incompleteness may be supplied.

But, the correctness of this construction still further appears from the clause of the section following the one already cited. The act provides, that the assessor may enter on any monthly or special list the names of such persons or parties in respect to whose returns there has been an omission, etc., together with the true amounts for which they are liable to tax. The omission, undervaluation or understatement is one in respect to the returns, relating to or growing out of the returns, and not necessarily contained in the returns themselves. The omission or understatement is one made either in the returns by the distiller, or made by the assessor upon or in respect to the returns.

Again, the returns contain no valuations, but a sworn statement of the amount of pounds or gallons of materials used for the purpose of producing spirits, and the number of gallons distilled, placed in warehouse or sold. The valuations in the case of distillers' assessments are made by the assessor. He determines the amount of the tax which ought to be assessed in accordance with the prescribed method of computation. There can, ordinarily, be no undervaluation in the distiller's returns, although there may be omissions, or understatements, or false and fraudulent statements. The undervaluation, so far as distillers are concerned, is an erroneous computation which the assessor has made upon or in respect to the facts stated in the return, or an undervaluation growing out of a false or fraudulent statement contained in the return. In either event, the word has reference to the assessor's, and not to the distiller's acts.

I am thus led to the conclusion that the assessor has power, within the time prescribed by the act, in case of any error committed by himself in his original assessment, to make a supplementary assessment and list, giving the true amount for which the distiller is liable over and above the amount previously assessed.

(2) The second point is, whether the reassessment is presumed to be correct, without affirmative proof, on the part of the government, that there was an error in the original assessment, or, at least, without affirmative proof that, prior to the re-assessment, it had been ascertained by the assessor that there was such error.

The assessor derives his power to make a re-assessment solely from the fact that it has been ascertained that the previous list was incomplete, in consequence of omissions, un-

dervaluations or understatements. The existence of this fact is necessary to give him authority to make the re-assessment. If the fact does not exist, he has no jurisdiction. The assessor, before he can make a new assessment, must investigate and ascertain, at least to his own satisfaction, that the previous assessment is incorrect. It is not to be presumed, from the act of the assessor in making a new assessment, that he had ascertained that there was an error in the prior assessment; for, the existence of a fact necessary to give an officer authority to act, must always be affirmatively shown. The rule, omnia praesumuntur esse rite acta, does not apply to the facts necessary to give the court jurisdiction. King v. All Saints, 1 Man. & R. 663. When an officer has authority to act, he will be presumed to act correctly; but, where the existence of a fact is necessary to give him authority, that fact must be proved. Rudd v. Johnson, 5 Litt. (Ky.) 19.

The distiller makes out his prima facie case by showing that he paid the original assessment for the same months for which he was re-assessed, and by showing his payment of the re-assessment under compulsion, his appeal, and the fact that he brought his suit within the proper time after the appeal was taken. The government, to establish a defence, cannot rely solely upon the record of a re-assessment, but should prove the jurisdictional fact necessary to exist in order to enable the assessor to make a re-assessment. That jurisdictional fact is, in my opinion, the determination or the decision of the assessor that an error had been committed. In this case, by reason of the death of the assessor, or from some other cause, it is not in the power of the government to show either the supposed error in the original assessment, or that the assessor ever ascertained that any error existed.

In the absence of any evidence on the part of the United States, except the record of the re-assessment, let judgment be entered for the plaintiff, to recover $3,773.73, with interest from the date of payment.